ATTORNEYS FOR APPELLANT

Karl L. Mulvaney

Nana Quay-Smith     

Larry J. Kane

Phil L. Isenbarger

Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE:

Frank C. Capozza

American Petroleum Institute

Indianapolis, Indiana

Thomas Sayer Llewellyn

G. William Frick

M. Elizabeth Cox

American Petroleum Institute

Washington, DC

Lewis E. Willis, Jr.

Petroleum Marketers Association and

Convenience Store Association

Indianapolis, Indiana

Robert S. Bassman

Alphonse M. Alfano

Petroleum Marketers Association and

Convenience Store Association

Washington, DC

ATTORNEY FOR APPELLEE

James E. Ayers

Crawfordsville, Indiana

ATTORNEYS FOR AMICI CURIAE:

Jeffrey A. Modisett

Attorney General of Indiana

Jon Laramore

Indianapolis, Indiana

Sheila M. O’Bryan

City of Indianapolis

Indianapolis, Indiana

Jane A. Seigel

Indiana Association of Cities and Towns

Indianapolis, Indiana

IN THE

SUPREME COURT OF INDIANA

SHELL OIL COMPANY, ) 

) 

 Appellant ) 

(Defendant below),     ) Indiana Supreme Court

) Cause No. 32S01-9806-CV-341

       v.          )

)

THE LOVOLD COMPANY,          ) Indiana Court of Appeals

                ) Cause No. 32A01-9705-CV-154

Appellee )

(Plaintiff below). )

)

­

APPEAL FROM THE HENDRICKS SUPERIOR COURT

The Honorable David H. Coleman, Special Judge

Cause No. 32D01-9603-CP-62 

­

ON PETITION TO TRANSFER

December 30, 1998

BOEHM, Justice.

This case, like 
Shell Oil Co. v. Meyer
, __ N.E.2d __ (Ind. 1998), also decided today, deals with the liability of refiners under the Indiana Underground Storage Tank Act (the “Act”).  In 
Meyer
 we held that a refiner is not an “operator” of the USTs at a retail gasoline station and therefore not liable for costs of corrective action from leaks in the tanks, merely because the refiner’s brand creates practical leverage over the station’s owner and operator.  Because this case is before the Court on Shell’s Motion for Summary Judgment, Shell is required to produce facts that, if true, negate its liability under each of the elements of the standard for “operator.”  We hold that under 
Meyer
, the record in this case is insufficient to support summary judgment.

Factual and Procedural Background

A. 
History of the Property

From the mid 1950s to the early 1980s the property at 800 East Main Street in Brownsburg housed a gasoline station.  In 1994 the Brownsburg Fire Department found a petroleum leak from the underground storage tanks at the property and reported it to the Indiana Department of Environmental Management.  Within a few months, the property owner, The Lovold Company (“Lovold”), removed the tanks and contaminated soil and cleaned up the property at a cost of $150,000.  

Lovold had purchased the property in 1985 from P&P Brownsburg Realty, Inc., and had never operated a gasoline station on the site.  The chain of title revealed seven owners over the course of forty years prior to Lovold’s purchase.  From 1970 to 1980, the owner, Galyan’s Brownsburg Inc., leased the property to Almond Oil (“Almond”).  Almond in turn subleased the property to others who operated a retail gasoline station.  Almond was a “jobber” or “independent distributor” for Shell from the mid 1960s to the late 1970s and supplied Shell gasoline to the Brownsburg station during the same time period.  The record in this case on summary judgment does not contain many of the details of this relationship.  We assume but cannot determine that Almond operated in a substantially similar way to Murphy Enterprises as described in 
Meyer
.

B. 
Proceedings in this Lawsuit

In December 1995, Lovold filed a complaint under the Act to recover its cleanup costs from Shell and three other defendants.  A second refiner was added as a defendant in September 1996.  The complaint asserted that Shell “owned, operated or exercised operational control” of the station and was liable for the cost of removing contamination from the site.  Shell moved for summary judgment on the ground that it was not an “operator” of the tanks at the station and accordingly had no liability under the Act.  After a hearing, the trial court denied Shell’s motion stating: 

the Court finds that there are genuine issues of fact precluding the granting of summary judgment.  Specifically, the issue of whether or not, Shell Oil Company was “in control of or having responsibility for” the underground storage tank(s) bringing Shell Oil Company within the meaning of an operator under I.C. 13-11-2-148(d). 

Shell appealed.  The Court of Appeals reversed and remanded, holding that the trial court erred in denying Shell’s Motion for Summary Judgment because Shell was not an operator under the Act.  
Shell Oil Co. v. Lovold Co.
, 687 N.E.2d 383 (Ind. Ct. App. 1997), 
reh’g
 
granted
 691 N.E.2d 521 (Ind. Ct. App. 1998), 
trans.
 
granted
  698 N.E.2d 1194 (Ind. 1998).

We granted transfer to resolve the conflict in the Court of Appeals between this case and 
Shell v. Meyer
, 684 N.E.2d 504 (Ind. Ct. App. 1997), 
trans.
 
granted
 698 N.E.2d 1183 (Ind. 1998).  We conclude that the trial court properly denied Shell’s Motion for Summary Judgment on the record before it, although not for primarily the same reasons given by the trial court.

Standard of Review

On appeal the standard of review of a summary judgment motion is the same standard used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Ind. Trial Rule 56(C).  All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party.  
Colonial Penn. Ins. Co. v. Guzorek
, 690 N.E.2d 664, 667 (Ind. 1997); 
Wright v. Carter
, 622 N.E.2d 170, 171 (Ind. 1993).  The moving party bears the burden of proving the absence of a genuine issue of material fact.  
Mullin v. Municipal City of South Bend
, 639 N.E.2d 278, 281 (Ind. 1994).  If the movant sustains this burden, the opponent must set forth specific facts showing that there is a genuine issue of material fact.  T.R. 56(E); 
Mullin
, 639 N.E.2d at 281.

I. Liability as an Operator

The legal standard for “operator” is set forth in 
Meyer
.  Briefly, the determination of who has “responsibility for the daily operation” and therefore is an “operator” of the tanks turns on (1) what constituted the daily operation of the tanks, (2) who did these things, (3) in what capacity that person was acting and (4) who is responsible for that person’s actions in that capacity.  
Shell Oil Co. v. Meyer
, 
   
 N.E.2d 
    
 , 
    
 (Ind. 1998).  The “daily operation” is to be judged by the standard of the time period in question.  The issue of who is responsible for the individual’s actions is governed by conventional principles of law
.

Shell designated the following evidence in support of its motion for summary judgment, all of which is not controverted.  Shell never owned the Brownsburg station.  Almond Oil (“Almond”) was a “jobber” or “independent distributor” for Shell from the mid 1960s to the late 1970s.  Almond’s arrangement with Shell included purchasing products at wholesale and the right to the use of Shell’s trademark.  Almond leased the Brownsburg station from Galyan’s from 1970 to August 1980.  Almond sub-leased the Brownsburg station to others who purchased Shell products from Almond.  Almond and the sublessee entered a supply contract for the Shell products and the use of Shell’s trademark.  Shell retained no right to direct Almond’s operations regarding the tanks at the stations Almond supplied and had no agreement with the sublessees at the Brownsburg station.

Although these facts demonstrate that Shell did not retain the contractual right to operate the station’s tanks, they do not negate the possibility that Shell is liable for the actions of those who did perform the daily operation of the tank.  Shell did not designate evidence permitting us to determine what activities were associated with the daily operation of the tank for the time period it was operated as a Shell station.  Nor did Shell designate evidence as to who performed (or did not perform) these activities and in what capacity.  Further, Lovold contends that Almond distributed Shell gasoline to the station for only part of the period it was a Shell brand station.  Neither party designates evidence establishing the dates that Almond acted as jobber compared to the time the station was a Shell retailer.  To prevail on summary judgment Shell must produce evidence that, if true, negates each element of the standard for “operator.”  On this record we find nothing that negates the possibility of a commissioned driver for Shell similar to Fred Smith in 
Meyer
 or some other individual acting on Shell’s behalf.  

At trial, Lovold will carry the burden of proof as to Shell’s status as an operator.  If Almond functioned as Murphy Enterprises in 
Meyer
, and was in the distribution chain at all times, Lovold may well fail.  Indeed, a renewed motion by Shell for summary judgment in light of 
Meyer
 may succeed.  However, on the facts designated in this record, Shell has not carried its burden of demonstrating the absence of a genuine issue of material fact and is accordingly not entitled to summary judgment under 
Mullin v. Municipal City of South Bend
, 639 N.E.2d 278, 281 (Ind. 1994). 

Conclusion

We affirm the decision of the trial court.

SHEPARD, C.J., and DICKSON and SELBY, J.J., concur.

SULLIVAN, J., not participating.